1052

CHARLES T. KLINE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101972. Promulgated July 19, 1941.

*J. Warren Brock, Esq.*, for the petitioner.
*Paul E. Waring, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: The petitioner contests the deficiency on the ground that the restriction upon the ownership of the Lavino shares had the effect of depriving them of value; or that if the shares are to be regarded as having value it was no more than the one-third of book value on the preceding December 31, 1936. The Commissioner's de-

termination is based upon a value of $43 a share, which he arrives at by using the 75 percent provision of the contract, applying it to book value on December 31, 1937, and "excess earnings available on common stock."

The evidence does not, in our opinion, require a holding that the Commissioner's determination of the value of the gift is too high. A restriction upon the right to dispose of shares, imposed by agreement upon the owner, does not, as a matter of law, deprive the shares of value, *Newman* v. *Commissioner*, 40 Fed. (2d) 225; certiorari denied, 282 U. S. 858; *T. W. Henritze*, 28 B. T. A. 1173. *Helvering* v. *Tex-Penn Oil Co.*, 300 U. S. 481, does not require a departure from this view. In holding that the shares there under consideration were without fair market value, the Court relied on a conjunction of "their highly speculative quality" and "the terms of a restrictive agreement making a sale thereof impossible." Petitioner's shares had no highly speculative quality; E. J. Lavino & Co. was old, sound, and prosperous, and, so far as the evidence shows, its stock could be held with substantial assurance of safety. It was not subject to the hazards of a new enterprise, cf. *Propper* v. *Commissioner*, 89 Fed. (2d) 617, or danger of dissension among shareholders, cf. *Morris D. Kopple*, 35 B. T. A. 1056. The restriction did not make a sale impossible, although it narrowed the freedom of disposition. Without more, it did not deprive the shares of fair market value, *Heiner* v. *Gwinner*, 114 Fed. (2d) 723; *State Street Trust Co.* v. *United States*, 37 Fed. Supp. 846; *R. E. Baker*, 37 B. T. A. 1135; affd., 115 Fed. (2d) 987; *James Couzens*, 11 B. T. A. 1040, 1163–4.

A more difficult problem is the determination of the value. Petitioner's insistence that it was no more than one-third of the book figure on December 31, 1936, presupposes his discharge for cause within one year from December 24, 1937, and the company's acceptance in 1937 of his obligatory offer to sell the shares to it at the stipulated price. The record indicates, however, that, while a possibility, such discharge was highly improbable. Petitioner had risen in the company's employ since his connection with it in 1919; his services were satisfactory, and his faculties were not impaired. The shares were given to him because he was recognized as a deserving officer; he has remained so ever since, and the entire record affirmatively indicates the probability of his continued employment and of the directors' disposition to respect his wishes concerning the shares. They approved of the transfer to a trust which was to continue the ownership after petitioner's death, and it can not be assumed that as a matter of course the company will accept the obligatory offer 75 percent of book value in the event of death, or at 50 percent or 33⅓ percent, in the event of circumstances requiring it. The company was under no duty to buy the shares, as it had been under no duty to give the employee the

shares in the first place, and if it should not accept an offer within one year after it was made, the restriction apparently was off.

In several cases the price at which shares had to be offered to others under restrictive agreements has been regarded as the limit of fair market value, *Salvage* v. *Helvering*, 297 U. S. 106; *Wilson* v. *Bowers*, 57 Fed. (2d) 682; *Commissioner* v. *Bensel*, 100 Fed. (2d) 639; *Lomb* v. *Sugden*, 82 Fed. (2d) 166. But the agreements considered in them were between parties who might be expected to press their bargaining advantage. In *Wilson* v. *Bowers*, *supra*, the court thought "the possibility that the options would not be exercised seems too extravagant to require further refutation." Here, on the contrary, it seems unlikely that any event prior to petitioner's death will require the contractual offer and unlikely that it will be accepted even then. But, if acceptance be presumed, book value as of the close of the preceding year can not be foreseen, and hence no prospective sale price can be set.

The restrictive agreement may have lessened the value of a share, but it can not be said that such reduced value was less than the $43 which the Commissioner has determined. The company's common capital stock account, surplus, dividends paid, and reserve for doubtful accounts at the close of 1937 totaled nearly $2,600,000, which was over $51 for each common share. The dividends of $4 a share and the sharp upward trend of earnings point to a greater value for an unrestricted share. In the absence of sales, the evidence shows plainly that $43 represents a very substantial allowance for the adverse effect of the restriction agreement.

The Commissioner's determination is sustained.

*Decision will be entered under Rule 50.*